<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT JOHN MEYER, | |
| Plaintiff, | Civil Action No. 21-15273 (JMV) (MAH) |
| v. | |
| | OPINION |
| STATE OF NEW JERSEY, et al., | |
| Defendants. | |

**VAZQUEZ, District Judge:**

Plaintiff, a civilly committed sexually violent predator presently confined at the Special Treatment Unit ("STU") at the Adult Diagnostic and Treatment Center in Avenel, New Jersey, is proceeding *pro se* with a civil rights Complaint pursuant to 42 U.S.C. § 1983. For the reasons stated in this Opinion, the Court will dismiss with prejudice Plaintiff's § 1983 claims against the State of New Jersey for lack of subject matter jurisdiction and dismiss with prejudice Plaintiff's § 1983 claims against the prosecutor Defendants for failure to state a claim. Additionally, the Court will dismiss without prejudice the remainder of Plaintiff's § 1983 claims for failure to state a claim and decline to exercise supplemental jurisdiction over his state law claims.

I. **BACKGROUND**[1]

This case arises from an altercation involving Plaintiff at the STU. Plaintiff names the following parties as Defendants: (1) the State of New Jersey; (2) J. Salanitro; (3) S. Yates; (4) F. Francis; (5) D. Wallace; (6) T. Hassan; (7) V. Dominick; (8) G. Mandara; (9) L. Stevens; (10) S.

---

[1] The Court accepts as true the well-pleaded factual allegations in the Complaint for the purposes of this Opinion only. The Court has made no findings as to the veracity of Plaintiffs' allegations.

Harrison; (11) A. Curry; (12) R. Ballard; (13) J. Siedman; (14) K. Poggi; and (15) John and Jane Does 1-50.

According to Plaintiff, on or about May 18, 2014, Defendant Francis approached Plaintiff's cell and ripped down Plaintiff's curtain, which exposed Plaintiff sitting nude on the toilet, "for all residents to see." (D.E. 1, at 16–17.)

On June 6, 2014, another resident, T.C., "woke plaintiff screaming" that Plaintiff[2] told Defendant Francis that "we were locked in together during first shift."[3] (*Id*. at 17.) It appears that T.C. asked Plaintiff to speak with Defendant Francis, to let her know that "it wasn't true." (*Id*.) At 4:30 p.m., Plaintiff went to speak with Defendant Francis, but she motioned for him to go away and told him not to worry about T.C. (*Id*.) Plaintiff returned to his cell and began to get ready for band night and then searched for Defendant Wallace to open the door to the band room. (*Id*.) Unable to find him, Plaintiff went to ask Defendant Francis to unlock the door, but she "reached behind her and grabbed a spray bottle [and] yelled get away from my desk [, and] then sprayed" Plaintiff with disinfectant. (*Id*.) Plaintiff cursed at her, and she attempted to goad Plaintiff into hitting her, but Plaintiff stated, "he does not hit wom[en]." (*Id*.)

Plaintiff left to get the rest of the music equipment, but Defendant Wallace stopped him and said, "you know what[,] I could pay someone to beat your ass." (*Id*. at 18.) Defendant Francis then started mocking Plaintiff "verbally[,] so plaintiff went off cursing at . . . [her] and calling her names and disrespecting her and belittling her for approximately 15 [minutes]." (*Id*.) At that point,

---

[2] It is not entirely clear as to whom Plaintiff is referring to at times in this section of the Complaint, as the section often uses the pronouns, he/him, and Plaintiff and T.C. are both male. (D.E. 1, at 17.)

[3] It is unclear, but from the context of the Complaint, to be "locked in" with someone appears to refer to some type of illicit act. (D.E. 1, at 17.)

Defendant Francis called a "code 33" and other officers, including Defendants Salintro, Francis, and Wallace, pepper sprayed Plaintiff outside of his cell, and then Defendant Salintro pepper sprayed Plaintiff again inside the cell. (*Id*.)  After officers locked Plaintiff in his cell, Defendant Salintro ordered Defendant Hassan to attack Plaintiff; Hassan then punched Plaintiff in the face and assaulted Plaintiff. (*Id*.)  Defendant Dominick then entered the room to assist handcuffing Plaintiff, and after the officers handcuffed him, Defendant Salintro pepper sprayed Plaintiff one more time, while all the other officers were "assisting to secure" Plaintiff. (*Id*.)  Afterwards, the officers showered off the pepper spray and took Plaintiff to the medical ward to receive medical treatment. (*Id*. at 18–19.) After the incident, Defendants Salanitro, Francis, Wallace, Hassan, Dominick, Mandara, and Stevens falsified incident reports, claiming that Plaintiff threatened to kill Defendant Francis and that he assaulted Defendants Hassan, Dominick, Mandara, and Stevens. (*Id*. at 19.)

Over the next few weeks, Defendant Harrison, an investigator, interviewed the officers and conspired to justify Defendant Francis' actions. (*Id*. at 19–20.)  He had her "write a second report to justify spraying plaintiff by stating that she was only spraying disinfectant around her desk." (*Id*.)  Video evidence showed, however, that Defendant Francis followed Plaintiff as he was leaving in order to spray Plaintiff with disinfectant. (*Id*. at 20.)  On or about July 9, 2014, Defendant Harrison filed charges in municipal court against Plaintiff for threatening officers and for obstructing administrative law, but Plaintiff never received a notice to appear and was never transported for the hearing that was supposed to take place on July 12, 2014. (*Id*.)

On or about October 23, 2014, an assistant county prosecutor, Defendant Seidman, obtained an indictment against Plaintiff for the above incident. (*Id*. at 21.)  Ultimately, a criminal trial took place between March 2, 2016, and March 4, 2016, during which Defendants Francis,

Wallace, Hassan, Dominick, Harrison, and Salintro, offered false and inconsistent testimony against Plaintiff. (*Id*. at 21–24.) The jury found Plaintiff guilty on one count of terroristic threats and one count of obstruction of administrative law. (*Id*. at 25.) The trial court sentenced Plaintiff to serve four years for the terroristic threats conviction and 18 months for the obstruction conviction, to be served concurrently. (*Id*.) The trial court also dismissed Plaintiff's charge for resisting arrest. (*Id*. at 26.)

Ultimately, Plaintiff appealed, and the Superior Court of New Jersey, Appellate Division, reversed his conviction and remanded the matter for a new trial, reasoning that the testimony, written reports, and video evidence were inconsistent, and could have tainted the jury's decision. (*Id*. at 27.) The State appealed, and the Supreme Court of New Jersey denied certification. (*Id*.) On June 14, 2019, the State moved to dismiss the indictment against Plaintiff, and on July 17, 2019, the trial court dismissed the indictment with prejudice. (*Id*.)

Plaintiff did not file the instant Complaint until August 6, 2021,[4] alleging that Defendants violated his rights under the Fourth and Fourteenth Amendments, and corresponding state law claims.

## II.  STANDARD OF REVIEW

District courts must review complaints in civil actions in which a prisoner files suit against "a governmental entity or officer or employee of a governmental entity," and in actions where the plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a). District courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon

---

[4] Plaintiff dated his Complaint on August 6, 2021, but the Court did not receive the Complaint until August 13, 2021. (D.E. 1, at 1-6.) Under the prison mailbox rule, the Court will accept the date on Plaintiff's Complaint as the filing date, rather than the date that the Court actually received his Complaint. *E.g.*, *Hedgespeth v. Hendricks*, No. 06-3883, 2007 WL 2769627, at *3 (D.N.J. Sept. 21, 2007), *aff'd*, 340 F. App'x 767 (3d Cir. 2009). As a result, the Court uses the earlier date.

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2).  When considering a dismissal for failure to state a claim on which relief can be granted, courts apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6).  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

Consequently, to survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**III.   DISCUSSION**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution, and corresponding state law claims.  To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.,* 36 F.3d 1250, 1255–56 (3d. Cir. 1994)).

**A.  Sovereign Immunity**

As a preliminary matter, Plaintiff has named the State of New Jersey in the caption of his Complaint and seeks millions of dollars in damages from the State.  (D.E. 1, at 1, 28.)  Plaintiff

has not, however, raised any allegations specific to the State. In any case, the Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Such immunity renders "states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *E.g.*, *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Further, the "Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n. 2 (3d Cir. 1996).

Stated differently, the Eleventh Amendment protects states, their agencies, and departments from suit in federal court regardless of the type of relief sought. *See, e.g.*, *Shahin v. Delaware*, 345 F. App'x 815, 817 (3d Cir. 2009). Consequently, the Court will dismiss with prejudice Plaintiff's claims against the State of New Jersey for lack of subject matter jurisdiction.

### B. Prosecutorial Immunity

Next, Plaintiff seeks to sue Defendants Curry, Ballard, Siedman, and Poggi, who are county prosecutors, under § 1983. Generally, Plaintiff sues these prosecutors for failing to investigate the veracity of the evidence against Plaintiff, for presenting perjured testimony before the grand and petit juries, and for obtaining an unlawful indictment and conviction.

Under our jurisprudence, a "state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992); *Schrob v. Catterson*, 948 F.2d 1402, 1417 (3d Cir. 1991). In particular, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a

6

judicial proceeding[] or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted).  Further, a prosecutor's actions "which occur in the course of his role as an advocate for the [government], are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id*.

Prosecutorial immunity is very broad, as prosecutors are absolutely immune from a § 1983 civil suit for damages for

> (1) instituting grand jury proceedings without proper investigation and without a good faith belief that any wrongdoing occurred; (2) initiating a prosecution without a good faith belief that any wrongdoing has occurred; (3) soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings, and trials; and (4) the knowing use of perjured testimony in a judicial proceeding.

*Jones v. Murphy*, No. 19-21629, 2022 WL 1229515, at *3–4 (D.N.J. Apr. 26, 2022) (citations omitted) (citing *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Imbler*, 424 U.S. at 424–27; *Kulwicki*, 969 F.2d at 1463–64, 1467; *Schrob*, 948 F.2d at 1411, 1417; *Rose v. Bartle*, 871 F.2d 331, 345 & n.12 (3d Cir. 1989); *Brawer v. Horowitz*, 535 F.2d 830 (3d Cir. 1976)).

With those principles in mind, Plaintiff contends that the assistant prosecutors in his case, Defendants Ballard, Siedman, and Poggi, violated his rights by failing to investigate the veracity of the evidence against Plaintiff, by soliciting false testimony before the grand and petit juries, and for securing an illegal indictment and wrongful conviction. (D.E. 1, at 12–14.)  As to Defendant Curry, the Middlesex County Prosecutor, Plaintiff alleges that he failed to protect Plaintiff from the wrongful actions of Defendants Ballard, Siedman, and Poggi. (*Id*. at 12.)

7

Plaintiff's claims are directly related to the decision to initiate and continue Plaintiff's prosecution and to present evidence before the grand and petit juries. Accordingly, the prosecutor Defendants are entitled to full prosecutorial immunity, and the Court will dismiss with prejudice the § 1983 claims against these Defendants.

### C. Statute of Limitations

It appears from the face of the Complaint that the § 1983 claims claims are time-barred. "Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* . . . for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 112 (3d Cir. 2013).

Although § 1983 provides a federal cause of action for personal-injury claims, the laws of the State in which the action arose governs the statute of limitations. *Estate of Lagano v. Bergen Cty. Prosecutor's Office,* 769 F.3d 850, 859 (3d Cir. 2014). In New Jersey, the statute of limitations for personal-injury torts is two years. N.J. Stat. § 2A:14-2. However, while state law provides the applicable statute of limitations, federal law controls when the statute of limitations begins to accrue. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

Federal law instructs that a § 1983 action begins to run when a plaintiff knows of or has reason to know of the injury. *See Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Significantly, accrual does not depend on whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *See Giles v. City of Philadelphia*, 542 F. App'x 121, 123 (3d Cir. 2013). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F.Supp.2d 477, 484 (W.D. Pa. 2011), *aff'd*, 504 F. App'x 182 (3d Cir. 2012). Accordingly,

8

"[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

Additionally, in *Heck v. Humphrey*, the Supreme Court limited a § 1983 plaintiff's right to recover for certain causes of action if the plaintiff has received a conviction on charges directly related to the § 1983 claim. 512 U.S. 477 (1994). *Heck* restricts a plaintiff's ability to recover damages for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Heck*, 512 U.S. at 486. As a result, in order to recover damages in such a case, a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. If a plaintiff "must wait to bring her civil claim until the underlying criminal proceedings are favorably resolved, then the plaintiff's civil claim does not accrue for statute of limitations purposes until the underlying criminal case is favorably terminated." *Nash v. New Jersey*, No. 22-01804, 2022 WL 4111169, at *3 (D.N.J. Sept. 8, 2022); *see also Coello v. DiLeo*, 43 F.4th 346, 355 (3d Cir. 2022).

In the present case, the Court construes the Complaint as alleging that the remaining Defendants, the STU employees, engaged in malicious prosecution in violation of the Fourth Amendment, and fabricated evidence in violation of the Fourteenth Amendment. *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014). To state a claim for malicious prosecution under the Fourth Amendment, a plaintiff must plead facts to show that

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

9

*Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003); *see also Halsey*, 750 F.3d at 296–97.

Next, to state a claim for fabricated evidence in violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must plead facts to demonstrate that "there is a reasonable likelihood that, absent that fabricated evidence, the [plaintiff] would not have been criminally charged." *Black v. Montgomery Cnty.*, 835 F.3d 358, 371–72 (3d Cir. 2016), *as amended* (Sept. 16, 2016). If the plaintiff was convicted, he would have to demonstrate that "there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted." *Halsey*, 750 F.3d at 294. The "reasonable likelihood" standard requires that a plaintiff draw a "meaningful connection" between his particular due process injury and the use of fabricated evidence against him. *Black*, 835 F.3d 358, 371–72. The Third Circuit has also cautioned that evidence "that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id*. at 372 (quoting *Halsey*, 750 F.3d at 295). Rather, "[t]here must be persuasive evidence supporting a conclusion that the proponents of the evidence are aware that [the] evidence is incorrect or that the evidence is offered in bad faith." *Id*. (internal quotation marks omitted).

Applying those principles here, it appears that Plaintiff complains of actions that occurred entirely between 2014 and 2016. (D.E. 1, at 16–27.) Plaintiff contends that during that time period, the STU Defendants fabricated written reports and falsely testified against Plaintiff at trial. (*Id*.) In addition to those acts, the Complaint alleges that Defendant Harrison falsely testified before the grand jury. (*Id*. at 20.)

As a result, assuming Plaintiff had facts to plead the remaining elements for his malicious prosecution and fabricated evidence claims, he knew or should have known of his injuries when Defendants testified against him at trial, in March of 2016, at the latest. Due to *Heck*, however,

these claims did not begin to accrue until after the favorable termination of Plaintiff's criminal case. *Coello*, 43 F.4th at 355; *Nash*, 2022 WL 4111169, at *3. According to the Complaint, the favorable termination occurred on July 17, 2019, when the trial court dismissed the indictment with prejudice. (D.E. 1, at 27.) In turn, the statute of limitations on these claims began to run on July 17, 2019, at the latest. Accordingly, because Plaintiff did not file the instant Complaint until August 6, 2021, the statute of limitations bars his § 1983 claims that began to accrue prior to August 6, 2019.

### D. Tolling

Certain statutes and doctrines may allow the Court to toll the statute of limitations in this case. For example, New Jersey statutes set forth certain bases for "statutory tolling." *See, e.g.*, N.J. Stat. § 2A:14–21 (detailing tolling because of minority or insanity); N.J. Stat. § 2A:14–22 (detailing tolling because of non-residency of persons liable). New Jersey law also permits "equitable tolling" where an adversary's misconduct induced or tricked a complainant into allowing the filing deadline to pass, or where "in some extraordinary way" someone or something prevented plaintiff from asserting his rights, or where a plaintiff has timely asserted his rights through a defective pleading or in the wrong forum. *See Freeman v. New Jersey*, 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002). However, absent a showing of a defendant's intentional inducement or trickery, the Court should apply the doctrine of equitable tolling sparingly and only where sound legal principles and the interest of justice demand its application. *Id.*

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrines. *See Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to his cause of action; (2) where extraordinary

circumstances prevent a plaintiff from asserting his claims; or (3) where the plaintiff asserts his claims in a timely manner but has done so in the wrong forum. *Id*. at 370 n.9.

In the present case, Plaintiff does not allege that he is entitled to tolling, and the Court does not perceive a basis for such tolling on the face of the Complaint. If Plaintiff believes that he can assert facts that warrant tolling, he may move to re-open this case and file an amended complaint that specifies the basis for such tolling. Accordingly, as Plaintiff's § 1983 claims remain time-barred, the Court will dismiss without prejudice the remainder of his § 1983 claims.

Finally, as no federal claims remain in this case, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, including any claims under the New Jersey Civil Rights Act. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

### IV. CONCLUSION

For the reasons set forth above, the Court will dismiss with prejudice Plaintiff's § 1983 claims against the State of New Jersey, for lack of subject matter jurisdiction, and dismiss with prejudice Plaintiff's claims against Defendants Curry, Ballard, Siedman, and Poggi. The Court will dismiss without prejudice the remainder of Plaintiff's § 1983 claims and decline to exercise supplemental jurisdiction over his state law claims. If Plaintiff believes that he can assert facts that warrant tolling, he may move to re-open this case and file an amended complaint stating the basis for such tolling. An appropriate Order follows.

Dated: 11/18/2022

                                                JOHN MICHAEL VAZQUEZ
                                                United States District Judge