UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT JOHN MEYER,** | Civil Action No. 21-15273 (MCA) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **STATE OF NEW JERSEY, et al.,** | |
| **Defendants.** | |

This matter has been opened to the Court by Robert John Meyer's filing of an Amended Complaint. (*See* ECF No. 12.) The Court has screened the Amended Complaint for dismissal under 28 U.S.C. § 1915(e)(2)(B), and, for the reasons explained below, dismisses the federal claims as time barred, denies equitable tolling, and declines supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. 1367.

I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

 a. The Original Complaint

Plaintiff filed his original complaint in this action or about August 6, 2021. (ECF No. 1.) After granting Plaintiff's application to proceed *in forma pauperis*, the District Court screened the original complaint for dismissal under 28 U.S.C. §1915(e)(2)(B) and dismissed the §1983 claims against the State of New Jersey. (ECF No. 5 at 5-6.) The District Court also dismissed the §1983 claims against the Prosecutor Defendants A. Curry, R. Ballard, J. Siedman, and K. Poggi on the basis of prosecutorial immunity.[1] (*Id.* at 6.) The Court determined that Plaintiff's §1983 claims for malicious prosecution and fabrication of evidence were time barred on the face of the

---

[1] In his Amended Complaint, Plaintiff does not reallege his §1983 claims against the State of New Jersey or the prosecutor defendants.

Complaint. (*Id.* at 8-12.) The Court also found that Plaintiff did not allege a sufficient basis for equitable tolling and provided Plaintiff with leave to amend. The Court also declined supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's remaining state law claims, including any claims under the New Jersey Civil Rights Act ("NJCRA"). (*Id.* at 12.)

### b. The Amended Complaint

After seeking and receiving an extension of time, Plaintiff filed an Amended Complaint against S. Yates, J. Salanitro, S. Francis, D. Wallace, T. Hassan, V. Domenick, G. Mandara, L. Stevens, S. Harrisson, and John and Jane Does 1-10.[2] (ECF No. 12 at 1-14.) The matter was subsequently reassigned to the undersigned. (ECF No. 13.)

In the Amended Complaint, Plaintiff alleges that he is civilly committed at the Special Treatment Unit ("STU") pursuant to the Sexually Violent Predator Act ("SVPA"). (Amended Compl. at ¶ 3.) Plaintiff further alleges that he had a verbal confrontation with SCO Francis on June 6, 2014, and she sprayed him with disinfectant. (*Id.* at ¶¶ 8-12.) SCO Francis called a Code 33, and the arriving corrections officers, including Salanitro, Hassan, Domenick, Mandara, and Stevens, allegedly assaulted and pepper sprayed Plaintiff. (*Id.* at ¶¶ 12-13.) Afterwards, the corrections officer Defendants allegedly conspired to file false reports, in which they claimed that Plaintiff had assaulted and threatened the officers. (*Id.* at ¶¶ 14, 17.)

The allegedly false reports resulted in criminal charges against Plaintiff for terroristic threats, obstruction of administrative law, and assaulting corrections officers. (*Id.* at ¶ 18.)

---

[2] Plaintiff's original complaint did not allege a basis for tolling; his accompanying certification claimed in in vague terms that "STU programs were shut down" due to COVID-19 and did not reopen until June 21, 2021. (*See* ECF No. 1-5 at 3.) Plaintiff also claimed that he was only permitted to use the computer and make copies once or twice a week. (*Id.* at 3-4.)

Plaintiff was indicted on October 23, 2014, and on July 14, 2015, prosecutors sought a superseding indictment, which added a charge for resisting arrest. (*Id.* at ¶¶ 19, 23.)

Administrator Defendant Yates allegedly upheld the confiscation of Plaintiff's discovery material, including a DVD recording of the June 6, 2014 events, which allegedly interfered with Plaintiff's ability to prepare for trial. (*Id.* at ¶¶ 20-22.)

Plaintiff's trial took place from March 2, 2016 through March 4, 2016, during which the correction officer defendants allegedly gave false testimony. (*Id.* at ¶¶ 26-31.) The resisting arrest charge was dismissed at the conclusion of the trial. (*Id.* at ¶ 32.) Plaintiff alleges that he did not testify because the trial judge ruled that he could be impeached with his prior conviction(s). (*Id.* at ¶ 34.) The jury acquitted Plaintiff of assaulting the corrections officers but found him guilty of one count of terroristic threats and one count of obstruction of the administration of law. (*Id.* at ¶ 33.)

Plaintiff alleges that on May 5, 2016, during the sentencing phase, he learned that Defendant Yates revealed confidential medical records protected by HIPAA without Plaintiff's consent or a court order. (*Id.* at ¶ 34.) On May 9, 2016, the state court sentenced Plaintiff to four years imprisonment for the terroristic threats charge and a concurrent 18-month sentence for the obstruction charge. (*Id.* at ¶ 35.) Plaintiff appealed his conviction. (*Id.* at ¶ 36.)

On May 13, 2016, Plaintiff was moved from the STU to South Woods State Prison to serve his sentence. (ECF No. 12-3, Certification of Robert J. Meyer ("Meyer Cert."), ¶ 3.) On July 10, 2017, Plaintiff was paroled and returned to the STU to continue his civil commitment. (Amended Compl. at ¶¶ 36, 38.)

On February 9, 2018, the Appellate Division reversed Plaintiff's conviction and remanded for a new trial. (*Id.* at ¶ 36.) The state appealed, and the Supreme Court denied certification on October 3, 2018. (*Id.*)

In the meantime, the state court dismissed the Indictment on June 14, 2019, and issued another order dismissing the Indictment with prejudice on July 17, 2019. (*Id.* at ¶ 39.) Plaintiff alleges that the state court issued the second dismissal order to clear up confusion regarding whether the Indictment was dismissed with or without prejudice. (*Id.*)

Prior to the dismissals of the Indictment, Plaintiff filed a notice of tort claim on July 12, 2019, with the State of New Jersey, but he alleges it was not answered. (*Id.* at ¶ 40.) As of June 2021, the New Jersey Office of Risk Management told Plaintiff that a response may take some time due to the shutdown associated with COVID-19. (*Id.*) Plaintiff alleges that he called the case manager several times and left messages, but he did not receive a response to his claims. (*Id.*)

Plaintiff further alleges that he mistakenly believed that he needed to file and receive a response to his notice of tort claim prior to filing his civil rights action and also alleges that the STU was "in various states of lockdown and isolated confinement of residents due to COVID-19." (*Id.* at ¶ 41.)

In his accompanying certification, Plaintiff contends that beginning in February 2020, the STU was placed on lockdown due to COVID-19,[3] and during this time no movement, programs, or activities occurred and residents were allowed out of their cells for only twenty minutes a day. (*See* Meyer Cert. at ¶ 8.) According to Plaintiff, the facility "partially opened," but there was still

---

[3] Notably, the first confirmed case of COVID-19 in New Jersey was announced on March 3, 2020. *See* Governor Murphy's Press Release dated March 4, 2020, available at https://www.nj.gov/governor/news/news/562020/20200304e.shtml, last visited June 2, 2025. The WHO declared COVID-19 a pandemic on March 11, 2020. *See* https://www.cdc.gov/museum/timeline/covid19.html, last visited June 2, 2025.

no law library access from May-August 2020, and the law library operated sporadically up until January 2023. (*Id.* at ¶¶ 8-9.)

Plaintiff has also submitted a certification from a former law library clerk at the STU. (ECF No. 12-4, Certification of Roy L. Marcum ("Marcum Cert.").) Marcum was the law library clerk at the STU from November 2018-October 2021. (Marcum Cert. at ¶ 3.) Like Plaintiff, Marcum contends that the law library operated only sporadically while the COVID-19 protocols were in effect and that the COVID-19 protocols ended approximately a month before he submitted his certification in January 2023. (*Id.* at ¶¶ 3, 10.)

Marcum also contends that beginning in June 2021, the law library was "in a state of chaos" due to interference by staff. (*Id.* at ¶ 4.) Printers were "nonfunctional" and "schedules were changed without warning." [4] (*Id.* at ¶ 5.) Marcum also contends that Plaintiff has difficulty reading and understanding the Court's instructions that Marcum must explain "elementary procedures to him," and that Plaintiff has only a minimal grasp of these procedures. (*Id.* at ¶ 8.) Plaintiff agrees that he has difficulty reading and understanding the Court's instructions and states without explanation that he only recently has been able to obtain assistance in filing a complaint. (Meyer Cert. at ¶¶ 13-14.)

### c. Plaintiff's Prior Federal Actions

Plaintiff does not disclose any prior federal actions in his original or Amended Complaint. (*See* ECF No. 1 at 2.) It appears that Plaintiff has filed at least three prior federal civil actions

---

[4] After Marcum was removed from the position without reason, two new clerks were hired but one was dismissed for alleged misconduct and the other was placed on Modified Activities Program ("MAP"). Marcum also notes that in the several months prior to his January 2023 certification, there was no working printer for the STU law library and that residents could only print if they have access to a personal word processor, as Marcum does, or if another resident with a word processor were willing to assist. (*Id.* at ¶ 11.)

asserting violations of his civil rights while incarcerated in the Adult Diagnostic Treatment Center ("ADTC") and the STU. *See* Meyer v. Ferguson, Civ. No. 01-5803 (KSH); Meyer v. Kent, Civ. No. 01-5836 (DRD); Meyer v. Hyatt, Civ. No. 13-6043 (WJM). The civil action Myer v. Hyatt is related to this action. There, Plaintiff submitted an Amended Complaint on October 6, 2015, in which he sued Yates, Francis, Salanitro, Wallace, Hassan, Domeneck, Mandara, Stevens, and Harrisson in connection with the June 6, 2014 incident and the resulting criminal investigation. (*See* ECF No. 13-6043, ECF No. 31, at 10-14.) These Defendants, with the exception of Salanitro and Harrisson, were served and answered the Amended Complaint December 7, 2015. (*Id.* at ECF No. 46.) After receiving permission to submit a second amended complaint, Plaintiff voluntarily withdrew Civ. Act. No. 13-6043 on or about April 16, 2018. (*Id.* at ECF No. 65.)

## II.  STANDARD OF REVIEW

At this time, the Court screens the Amended Complaint for dismissal under § 1915(e)(2)(B). Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the pleading stage, the Court accepts the

facts alleged in the pro se complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations, however, do not suffice. *Iqbal*, 556 U.S. at 678. As relevant here, when screening a complaint pursuant to the PLRA, courts may "dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint." *McPherson v. U.S.*, 392 F. App'x 938, 943 (3d Cir. 2010. Dismissal is appropriate when the "allegations make clear the action is not timely." *Id.*

### III.  DISCUSSION

Based on Plaintiff's allegations, the Court construes §1983 and NJCRA claims for malicious prosecution, fabrication of evidence, and conspiracy against Defendants Salanitro, Francis, Wallace, Hassan, Domenick, Mandara, Stevens, and Harrisson.[5] The Court also construes a supervisory liability claim under § 1983 and the NJCRA against Defendant Yates based on her alleged knowledge of and acquiescence in the fabrication of evidence by her subordinates. The Court also construes Plaintiff to allege § 1983 and NJCRA claims against Yates for interference with his right to prepare a defense and a violation of his right to medical privacy.

####   a.  The Federal Claims in the Amended Complaint are Untimely

The Court begins by analyzing the timeliness of the federal claims. The amount of time a § 1983 claimant has to bring suit is determined by the personal-injury law of the state where the alleged harm occurred, *Coello v. DiLeo*, 43 F.4th 346, 352 (3d Cir. 2022) (citing *Dique v. N.J. State*

---

[5] Plaintiff does not appear to assert § 1983 claims for excessive force against the corrections officer Defendants arising from the alleged assault that occurred on June 6, 2014. To the extent Plaintiff sought to bring such a claim, the Court would dismiss it as time barred because it accrued over 10 years ago at the time of his injury. Indeed, Plaintiff filed a prior action about the June 6, 2014 incident and subsequently withdrew that action.

*Police*, 603 F.3d 181, 185 (3d Cir. 2010)), and New Jersey law gives litigants two years to file a personal-injury claim. *See id.* (citing N.J. Stat. Ann. § 2A:14-2).

Plaintiff's § 1983 claims against Yates arising from her alleged interference with his right to prepare a defense and her violations of his right to medical privacy accrued more than two years prior to the filing of his Complaint and are time barred. Yates allegedly violated Plaintiff's right to prepare a defense to the pending criminal charges when she upheld the decision to confiscate the video evidence sent to him by his attorney.[6] This claim accrued when it occurred in 2016 (or at the latest when his conviction was overturned by the Appellate Division), and is clearly time barred. Yates also allegedly violated his right to medical privacy[7] some time prior to his sentencing in May 2016 when she turned over his medical information to the prosecution without his consent or a court order. This claim accrued at the latest in May 2016 when Plaintiff learned of the disclosure, and is also time barred.

---

[6] A pretrial detainee has a right of access to the courts with respect to legal assistance and participation in preparing a defense against pending criminal charges. *See, e.g., Prater v. City of Phila.*, 542 F. App'x 135, 136-37 (3d Cir. 2013); *May v. Sheahan*, 226 F.3d 876, 883-84 (7th Cir. 2000). A pretrial detainee may also raise claims alleging interference with his Sixth Amendment right to the assistance of counsel. *Prater*, 542 F. App'x at 137.

[7] The Third Circuit has recognized that inmates have a constitutional right to privacy in their medical information, which is "subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001). The Court assumes without deciding that Plaintiff, as a civil detainee, has at least the same expectation of privacy in his medical records as a convicted prisoner has.

The Court next addresses when Plaintiff's § 1983 claims for malicious prosecution,[8] fabrication of evidence,[9] conspiracy,[10] and supervisory liability[11] accrued. Under federal law, a malicious prosecution claim accrues when the prosecution comes to "a favorable termination." *Thompson v. Clark*, 596 U.S. 36, 44 (2022). Likewise, "[t]he statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 588 U.S. 109, 114 (2019). Favorable termination occurs when the prosecution is "terminated, disposed of, or, as the books usually say, *at an end.*" *Thompson*, 596 U.S. at 45 (quoting *Clark v. Cleveland*, 6 Hill 344, 346 (1844)) (emphasis in original). In *Coello v. DiLeo*, 43 F.4th at 350, the plaintiff's conviction was vacated in a collateral proceeding with no objection from the state. Under the circumstances of that case, the Third Circuit held that the favorable-termination requirement "when the state court vacated [the plaintiff's] criminal conviction." *Id.* at 355. In a more recent nonprecedential

---

[8] The Court construes Plaintiff to bring claims for malicious prosecution under § 1983. Generally, prosecutors are responsible for initiating criminal proceedings, but courts have long "recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed information from, prosecuting authorities." *Gallo v. City of Phila.*, 161 F.3d 217, 220 n.2 (3d Cir. 1998).

[9] "If a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment." *Mervilus v. Union Cnty.*, 73 F.4th 185, 193 (3d Cir. 2023) (cleaned up) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014)).

[10] The construes Plaintiff to allege that the correction officer defendants engaged in a § 1983 conspiracy by falsifying evidence in order to maliciously prosecute him. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).

[11] "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir.1995)).

decision, the Third Circuit explained that "favorable termination is the moment when the outcome of the prosecution can no longer be changed by the trial court." *DiGiesi v. Township of Bridgewater Police Department*, 2025 WL 1218254, at *2 (3d Cir. Apr. 28, 2025). "That timing necessarily turns on state-court practices." *Id.* (citing *Smith v. Massachusetts*, 543 U.S. 462, 470–71 (2005) (looking to state-court practices to determine the finality of a court-directed judgment of acquittal). In *DiGiesi*, the Third Circuit specifically considered whether the statute of limitations for the plaintiff's malicious-prosecution claim under § 1983 started running when the trial judge orally acquitted him following a bench trial or when the Court later entered a written judgment and determined that the latter date controlled. *Id.* at *1-2. The Third Circuit found that under New Jersey law, the outcome of the prosecution can no longer be changed when the court issues the order of dismissal. *See Coello*, 43 F.4th at 356 (citing *Bessasparis v. Twp. of Bridgewater*, No. A-1040-19, 2021 WL 1811637, at *7 (N.J. Super. Ct. App. Div. May 6, 2021) (per curiam) (discussing "causes of action [for malicious prosecution] accru[ing] on ... the day [a] court issued orders of dismissal")).

Here, the Appellate Division overturned Plaintiff's criminal conviction on appeal and remanded his case for a new trial on October 3, 2018. (Amended Complaint at ¶ 36.) Although the Appellate Division issued an order vacating Plaintiff's conviction, it also remanded for a new trial. As such, the Court assumes without deciding that this order did not terminate or dispose of the criminal charges, as required for a favorable termination. Plaintiff alleges that the trial court dismissed the indictment on June 14, 2019, and "due to confusion about whether the case was dismissed with or without prejudice, the court reissued the order dismissing the indictment with prejudice and that order was filed on July 17, 2019." (*Id.* at ¶ 39.) To bring timely claims for malicious prosecution, fabrication of evidence, conspiracy, and supervisory liability, Plaintiff

should have filed his Complaint by June 14, 2021, or two years after the state court dismissed the charges. Giving Plaintiff the benefit of the prisoner mailbox rule, he submitted his original complaint for filing on August 6, 2021, the date he signed his original complaint and cover letter. (ECF No. 1, Complaint at 29, ECF No. 1-1.) Even if the Court calculates the limitations period from the second dismissal order entered on July 17, 2019, Plaintiff filed his Complaint 20 days after the two-year limitations period expired. As such, the malicious prosecution, fabrication of evidence, conspiracy, and supervisory liability claims are also untimely.

### b. Equitable Tolling Arguments

The Court next considers whether Plaintiff has provided sufficient facts supporting equitable tolling of the limitations period.[12] "'State law, unless inconsistent with federal law" governs whether a limitations period should be tolled. *McPherson v. United States*, 392 F. App'x 938, 944 (3d Cir. 2010) (quoting *Dique*, 603 F.3d at 185). Equitable tolling affords relief from inflexible, harsh, or unfair application of a statute of limitations, but it requires the exercise of reasonable insight and diligence by a person seeking its protection. *Villalobos v. Fava*, 342 N.J. Super. 38, 52 (App. Div. 2001); *see also Freeman*, 347 N.J. Super. App. Div. at 31–32 (App. Div. 2002) ("Plaintiffs have a duty to diligently pursue their claims."). Under New Jersey law, a court may equitably toll a statutory limitations period "under very limited circumstances." *Barron v. Gersten*, 472 N.J. Super. 572, 577 (App. Div. 2022). The remedy may be appropriate "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his [or her] rights, or (3) if the plaintiff has timely asserted his [or her]

---

[12] New Jersey also recognizes several bases for statutory tolling. *See, e.g.*, N.J. Stat. Ann. § 2A: 14-21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A: 14-22 (detailing tolling because of non-residency of persons liable). The Amended Complaint does not allege facts supporting Plaintiff's insanity or minority, or the non-residency of the defendants.

rights mistakenly in the wrong forum."[13] *Id.* (alterations in original) (quoting *F.H.U. v. A.C.U.*, 427 N.J. Super. 354, 379 (App. Div. 2012)). And "[a]bsent a showing of intentional inducement or trickery by a defendant, [equitable tolling] . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice." *Id.* (citing *Binder v. Price Waterhouse & Co., L.L.P.*, 393 N.J. Super. 304, 313 (App. Div. 2007). Crucially, to benefit from equitable tolling, a plaintiff must demonstrate that he or she has been diligent in the pursuit of their claims. *Barron*, 472 N.J. Super. at 577; *see also Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255-57 (2016) (reiterating that diligence "covers those affairs within the litigant's control," while extraordinary circumstances "by contrast, is meant to cover matters outside its control.").

In his Complaint and supporting submissions, Plaintiff alleges two reasons for his late filing: 1) his mistaken belief that he needed to file a notice of claim to proceed with his civil rights action and 2) the COVID-19 restrictions at the STU (and in the law library in particular). (*See* Amended Complaint at ¶¶ 40-41; *see also* ECF No. 12-2, Supporting Brief; ECF No. 12-3, Certification of Robert J. Meyer; ECF No. 12-4, Certification of Roy L. Marcum.)

Plaintiff argues in his "supporting brief" that his timely filing of the notice of claim, which allegedly went unanswered by the state, satisfies the third basis for equitable tolling, i.e., timely filing in the wrong forum. The Court disagrees. Generally speaking, "[c]ases applying wrong-

---

[13] Similarly, under federal law,

> there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting ... her rights; or (3) where the plaintiff has timely asserted . . . her rights mistakenly in the wrong forum.

*D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020)

forum tolling typically involve a scenario where a plaintiff initially files his complaint in the wrong forum and then, after re-filing in the proper forum, argues that the initial complaint tolled the applicable statute of limitations." *Williams v. Tech Mahindra (Americas) Inc.*, 2024 WL 5055834, at *2 (3d Cir. 2024) (emphasis supplied). Here, Plaintiff did not file his complaint in the wrong forum; rather, he filed a notice of claim, which is a prerequisite to filing a NJTCA claim against public entities or employees in New Jersey. It is well established that the notice of claim provision in the NJTCA does not apply to actions alleging violations of federal constitutional rights under 42 U.S.C. §1983 or even to state constitutional torts. *See Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) (explaining that "NJTCA's notice requirements do not apply to federal claims, including § 1983 actions. . . or to state constitutional torts") (citations omitted); *Fuchilla v. Layman*, 109 N.J. 319, 330 (1988) ("notice provisions of the Act do not apply to section 1983 actions"); *see also Felder v. Casey*, 487 U.S. 131, 138 (1988); *Greenway Development Co., Inc. v. Borough of Paramus*, 163 N.J. 546, 558 (2000). Thus, Plaintiff's mistake was not that he filed his complaint in the wrong forum but that he waited to receive a response from to his tort claim notice prior to filing his federal civil rights complaint. For these reasons, the Court finds that the timely filing of Plaintiff's notice of claim does not qualify as a timely filing of his complaint in the wrong forum, and he is not entitled to equitable tolling on this basis.

The Court also takes judicial notice of the fact that Plaintiff's filed a related action about the June 6, 2014 incident, and finds that his litigation history belies his claims that he believed he needed to wait for a response to his tort claims notice to file a federal civil rights action or otherwise did not know how or when to commence a federal action. Nevertheless, even if Plaintiff were confused about the filing requirements for a civil rights action due to his limited understanding of the law, his confusion is not a basis for equitable tolling.

Plaintiff also contends that the lockdowns and restrictions on law library access during the COVID-19 pandemic satisfies the extraordinary circumstances requirement for equitable tolling. According to Plaintiff, the STU law library was closed from May 2020 to August 2020 due to the COVID-19 pandemic, and operated sporadically during the remainder of the limitations period. However, Plaintiff had approximately seven months to seek assistance in drafting and filing his complaint prior to the start of the COVID-19 pandemic. And this is not a case where Plaintiff's limitations period expired in the early weeks or months of the COVID-19 pandemic. Notably, in *Barron v. Gersten*, 472 N.J. Super. at 579, certif. denied, 252 N.J. 429 (2022), the Appellate Division considered the language in four omnibus orders issued by the New Jersey Supreme Court in response to COVID-19 and determined that the Supreme Court declared the period from March 16, 2020 through May 10, 2020 a legal holiday; the Appellate Division also held, however, that that the orders "did not have the effect of adding days to any statute of limitations." *Id.* at 579 (finding the plaintiff's complaint time barred by 13 days and declining to afford equitable tolling). Moreover, the argument that the lockdowns associated with COVID-19 amount to extraordinary circumstances "is more compelling during the very early months of the COVID-19 pandemic." *See Peek v. United States*, No. 20-9747, 2023 WL 8110795, at *10 (D.N.J. Nov. 23, 2023) (finding that the lockdowns during the first four months of the COVID-19 pandemic coupled with the petitioner's alleged mental health difficulties warranted tolling). Here, Plaintiff's limitations period did not expire until June or July 2021, more than a year after the period declared a legal holiday by the New Jersey Supreme Court's omnibus orders.

Moreover, the availability of "[e]quitable tolling 'does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims.'" *See Fisher v. Hollingsworth*, 115 F.4th 197, 213 (3d Cir. 2024) (citing *Barron*, 472 N.J. Super at 577). Here,

even if ongoing lockdowns and law library restrictions associated with the COVID-19 pandemic amounted to extraordinary circumstances, Plaintiff has not provided facts showing that he was diligent in attempting to prepare and file his federal complaint.  The Court credits Plaintiff's allegations about the COVID-19 closures and restrictions, and recognizes that he is pro se, civilly committed, and has difficulty reading and understanding the law.  But the Court also takes notice of his allegation that he followed up several times with the New Jersey Office of Risk Management about his tort claim notice, despite his alleged limitations and the restrictions associated with the COVID-19 pandemic.  Ultimately, Plaintiff fails to provide sufficient facts showing that he diligently attempted to draft and file his complaint during the two-year limitations period but was thwarted by restrictions associated with the COVID-19 pandemic.

For all these reasons, Plaintiff has not shown that he is entitled to equitable tolling of the limitations period.  Therefore, the Court dismisses Plaintiff's § 1983 claims for malicious prosecution, fabrication of evidence, conspiracy, and supervisory liability, as well as his claims for interference with his right to prepare a defense and his right to medical privacy, as time barred under 28 U.S.C. § 1915(e)(2)(B) and finds that Plaintiff has not provided an adequate basis for equitable tolling.  The Court denies further leave to amend the federal claims, finding that such amendment would be futile.

    c. **Supplemental Jurisdiction**

Having dismissed the federal claims, the Court declines supplemental jurisdiction over the remaining state law claims, including any claims arising under the NJCRA or other state law.  *See* 28 U.S.C. § 1367(c)(3).  Section 1367(d)(3) "suspends the statute of limitations for two adjacent time periods: while the claim is pending in federal court and for 30 days postdismissal." *Artis v. D.C.*, 583 U.S. 71, 83 (2018); *see* 28 U.S.C. § 1367(d).  Plaintiff is free to refile his state law claims

in state court within that 30-day period. The Court expresses no opinion on whether the state court would afford Plaintiff equitable tolling on his state law claims (or find that the state is equitably estopped from asserting a statute of limitations defense) based on Plaintiff's allegations that the New Jersey Office of Risk Management failed to respond to his tort claims notice. Although Plaintiff has 30 days to refile his state law claims in state court, he may not reassert his § 1983 claims because the Court has dismissed these claims as untimely and denied further leave to amend.

## IV.  CONCLUSION

For the reasons explained above, the Court dismisses the federal claims in the Amended Complaint pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B) and denies equitable tolling and further leave to amend the federal claims. The Court declines supplemental jurisdiction over any remaining state law claims under 28 U.S.C. § 1367(c)(3) and notifies Plaintiff that he may refile his state law claims in state court pursuant to 28 U.S.C. § 1367(d). An appropriate Order follows.

6/30/25

_____
Hon. Madeline Cox Arleo
United States District Judge